AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>Five Cellular Phones Seized from Marco Medina's Dodge Charger and Two Cellular Phones Seized from James Vilan's Person in in storage with the DEA at 3945 E Broadway Rd, Phoenix, Arizona 85040. | Case No. 22-3122 MB |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before May 14, 2022 *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: May 10, 2022 @ 1:4 p    M Morrissey
                                              *Judge's signature*

City and state: <u>Phoenix, Arizona</u>    <u>Honorable Michael T. Morrissey, U.S. Magistrate Judge</u>
                                           *Printed name and title*

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*Five Cellular Phones Seized from Marco Medina's Dodge Charger and Two Cellular Phones Seized from James Vilan's Person in in storage with the DEA at 3945 E Broadway Rd, Phoenix, Arizona 85040.* | Case No. 22-3122 MB<br><br>**(Filed Under Seal)** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 856 | Maintaining a Drug-Involved Premises |
| 18 U.S.C. § 1956(a)(1) | Money Laundering |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of a Drug Trafficking Offense |
| 21 U.S.C. § 843(b) | Use of a Communication Facility to Commit a Federal Drug Felony |

The application is based on these facts:

**See attached Affidavit of Task Force Officer Robert McCabe**

☒ Continued on the attached sheet.
☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Heather H. Sechrist

*Digitally signed by HEATHER SECHRIST*
*Date: 2022.05.09 18:26:50 -07'00'*

Sworn to before me and signed in my presence.

Date: May 10, 2022

City and state: Phoenix, Arizona

*Applicant's Signature* (Digitally signed by ROBERT MCCABE, Date: 2022.05.10 08:42:26 -07'00')

TFO Robert McCabe, Drug Enforcement Administration
*Printed name and title*

M Morrissey

*Judge's signature*

Honorable Michael T. Morrissey, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property ("SUBJECT CELLULAR TELEPHONES") to be searched is:

1. blue Apple iPhone located within a blue flowery bag within MEDINA's Dodge Charger (labeled as MEDINA 1);

2. Motorola Moto G Power cellular phone located within a blue bag within MEDINA's Dodge Charger (labeled as MEDINA 2);

3. Apple iPhone inside a clear case located within the center console area of MEDINA's Dodge Charger (labeled as MEDINA 3);

4. space grey Apple iPhone located within a blue bag within MEDINA's Dodge Charger (labeled as MEDINA 4);

5. red Samsung phone located within a Michael Kors bag within MEDINA's Dodge Charger (labeled as MEDINA 5);

6. blue Samsung phone located on the person of VILAN (labeled as VILAN 1); and

7. red Apple iPhone located on the person of VILAN (labeled as VILAN 2).

The SUBJECT CELLULAR TELEPHONES are currently located at the DEA at 3945 E Broadway Rd, Phoenix, Arizona 85040.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.  Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES that relate to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), 21 U.S.C. § 856 (Maintaining a Drug-Involved Premises), 18 U.S.C. § 1956(a)(1) (Money Laundering), 18 U.S.C. § 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Offense), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), including:

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;
   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);
   c. all bank records, checks, credit card bills, account information, or other financial records;
   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;
   e. all information regarding the receipt, transfer, possession, transportation, or use of firearms;
   f. any information recording schedule or travel;
   g. evidence indicating the cellular telephone user's state of mind as it relates to the crime(s) under investigation;
   h. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Robert McCabe, being first duly sworn, hereby deposes and states as follows:

### I. INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone/devices further described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONES"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2. I am a Task Force Officer (TFO) with Drug Enforcement Administration (DEA), and I have been since October 1, 2021. I am currently assigned to Group 16/DEALERS.

3. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. In addition to being a DEA TFO, I am a Detective with the Goodyear Police Department (GPD), and I have been employed with the GPD since August 2016 and assigned to the Special Investigations Unit since July 2017. I also served in the GPD as a uniformed patrol officer and a Crisis Intervention Officer (CIT). Previously, I was employed by the Scottsdale Police Department (SPD) as a sworn officer from November 2006 to July 2016. I have been trained in investigations. I attended the Arizona Law Enforcement Academy (ALEA) class #422 and received basic patrol and investigative training. I attended Pre-Academy, Post-Academy and Field Training conducted by the SPD Training Unit and Field Training conducted by the GPD Training Unit. Upon graduation from the Academy in April 2007, I worked for the SPD as a uniformed patrol officer (USB),

Gang Liaison Officer (GLO), Fraudulent Document Recognition Expert (FDRE), Narcotics Trained Officer (NTO) and Investigative Services Officer (ISO). From 2010 to 2016, I served as a Detective with the SPD Investigative Services Bureau (ISB), Crimes Against Person (CAP) Section, Gang Investigations Unit (GIU) and with the SPD Investigative Services Bureau (ISB), Crimes Against Person (CAP) Section, Domestic Violence Unit (DVU). I also served the SPD as a Field Trainer in the Crimes Against Person Section training detectives.

5.   I have conducted and participated in numerous investigations involving property related crimes (including burglary, criminal damage, fraud, identity theft, trespass, shoplifting, trafficking in stolen property, organized retails theft, computer-related crimes, forgery, weapons violations and criminal syndicates/gang crimes) that resulted in both misdemeanor and felony arrests. I have conducted and participated in numerous investigations involving persons related crimes (including disorderly conduct, assault, sexual assault, sexual molestation, homicide, suicide, domestic violence, crimes against children, missing persons, kidnapping, and armed robberies) that resulted in both misdemeanor and felony arrests. I have conducted and participated in numerous drug investigations to include actions taken to both prevent the sale and use of illegal substances including marijuana, cocaine, ecstasy, heroin and methamphetamine that resulted in felony arrests. I have conducted and participated in numerous drug investigations involving the abuse and illegal sale of prescription medications that resulted in felony arrests. I have conducted and participated in numerous gang-related investigations to include weapon violations, criminal enterprise, homicide, threats, assault, burglary, theft and varied sex crimes that resulted in misdemeanor and felony arrests. During this time, I became familiar with the ways in which crimes are committed with respect to property, persons, drugs and computer/electronic devices to promote further offenses (sometimes involving dangerous and non-dangerous crimes).

6. I have spoken to knowledgeable persons about the methods and practices of persons involved in property crimes, drug offenses, weapons offenses, violent offenses and criminal traffic offenses. All of these types of sources of information have provided me with objective details of the methods and practices of property crimes, drug investigations, weapons offenses, violent offenses and criminal traffic offenses as well as those methods and practices that are used to promote and record such offenses.

7. I have participated in numerous surveillances and arrests of property crime related suspects and person crime related suspects. I attended and successfully completed numerous schools presented by the GPD, SPD and the Arizona Peace Officers and Training (AZPOST) to include Field Drug Identification, Sex-Crimes, Domestic Violence Crimes, Gang Related Crimes and Racially Motivated Criminal Activity. Additionally, these schools and seminars addressed techniques used to identify, investigate and recognize methods of both property crime and person crime offenses. I have attended and successfully completed other schools. These include a certification in basic field-testing of unknown powders and investigation of clandestine labs. The focus of these schools was to educate the participants in drug identification, investigative methods and techniques, officer safety issues and current trends and methods used by the traffickers of stolen property, narcotics, dangerous drugs and marijuana. Additionally, these schools and seminars addressed techniques used to identify, investigate, infiltrate, and recognize the methods used by these traffickers and the members of their organizations. As a component, part of the education involved the study of the methods by which criminals hide and conceal evidence (including drugs and assets) from law enforcement detection.

8. While in law enforcement, I have participated in hundreds of property-related investigations and hundreds of narcotic related investigations. I am familiar with the methods used by those engaged in criminal activity, drug activity and controlled substance activities to conduct their business, transport and distribute their products, protect their

associates and conceal their identities, avoid detection and identification of the assets, and activities and whereabouts.

9. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; analysis of public records; analysis of social media information; analysis of telephone records; and analysis of financial records.

10. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II. **IDENTIFICATION OF PROPERTY TO BE EXAMINED**

11. The property to be searched (collectively referred to the SUBJECT CELLULAR TELEPHONES and described further in Attachment A): a blue Samsung phone (VILAN 1); a red Apple iPhone (VILAN 2); a blue Apple iPhone (MEDINA 1); a Motorola Moto G Power cellular phone (MEDINA 2); an Apple iPhone (MEDINA 3); a space grey Apple iPhone (MEDINA 4); and a red Samsung phone (MEDINA 5).

12. The SUBJECT CELLULAR TELEPHONES are currently in the lawful possession of the DEA. As further described below, MEDINA 1 – 5, were seized from MEDINA's vehicle incident to arrest. The other two phones, VILAN 1 – 2, were seized from VILAN incident to arrest.

13. The SUBJECT CELLULAR TELEPHONES are currently in storage with the DEA at 3945 E Broadway Rd, Phoenix, Arizona 85040. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONES have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONES first came into the

possession of the DEA. The applied-for warrant would authorize the forensic examination of the SUBJECT CELLULAR TELEPHONES for the purpose of identifying electronically stored data particularly described in Attachment B.

### III. BASIS FOR PROBABLE CAUSE

1. On May 2, 2022, investigators observed Marco Antonio MEDINA, during surveillance, involved in two drug transactions in the Circle K parking lot at 8617 North 27th Avenue, Phoenix, Arizona 85051 when he met with four different individuals and made an exchange of drug for US Currency. Based on training and experience and on observations at the time, investigators contacted all five subjects involved in the observed transactions. Before contact with MEDINA, investigators had also learned MEDINA had three different warrants for his arrest out of the Maricopa County Superior Court.

2. When investigators attempted to contact MEDINA in the parking lot at his vehicle, MEDINA ran on foot southbound from officers and was detained a short distance from 8617 North 27th Avenue. When MEDINA was detained for his warrants and for the drug transactions he was found with a handgun (Glock 35 / serial number KHG818), which was loaded with a magazine with ammunition and with a .40 caliber round in the chamber, tucked into his waistband.

3. MEDINA was placed under arrest at approximately 9:30 a.m., and he was advised of his Miranda Rights. MEDINA stated there were fentanyl pills, methamphetamine, and Xanax bars in his vehicle. MEDINA said there were no other guns in the vehicle. MEDINA stated there were approximately 150,000 more fentanyl pills in his apartment. MEDINA consented to a search of the Dodge Charger, and he signed a consent to search form.

4. While investigators were interviewing MEDINA, other investigators interviewed subjects on scene that had contact with MEDINA just before he fled on foot. The two male subjects with MEDINA before he fled were identified as Brandon

BULLARD and James VILAN. Investigators learned the following from both BULLARD and VILAN: they were present to purchase fentanyl pills from MEDINA. MEDINA regularly sold them fentanyl pills. MEDINA offered them cocaine, methamphetamine, and Xanax in the past. Inside the vehicle occupied by the two subjects, investigators located the following items identified as drug items sold to the two subjects: 35 grams of powder methamphetamine, 99 grams of Xanax bars, and 138 grams of fentanyl pills. BULLARD allowed investigators to look at his cell phone. BULLARD's cell phone had a message from May 2, 2022 that indicated he was present to obtain fentanyl pills from MEDINA. VILAN turned his two cell phones over to investigators as evidence and consented to their search. The cellular phones had recently powered down and were not able to be accessed. VILAN said that he was there to purchase fentanyl pills from MEDINA. VILAN also stated that he has bought fentanyl pills and methamphetamine from MEDINA in the past. VILAN also stated he, himself, is involved the sale of fentanyl pills. The two phones turned over to investigators are: (1) a blue Samsung phone located on the person of VILAN (labeled as VILAN 1), and (2) a red Apple iPhone located on the person of VILAN (labeled as VILAN 2). Your affiant believes, based on training and experience, that there is probable cause to believe that both of VILAN's phones contain evidence related to the drug transactions. This is because VILAN had both phones on his person, and MEDINA met VILAN to sell fentanyl, indicating that there were communications to arrange that transaction and that those communications will be evidenced on one or both phones.

5. During the search of the Dodge Charger, investigators found the following: three more handguns loaded with ammunition, unloaded / loose ammunition, approximately 1.6 kilograms of fentanyl pills (approximately 16,000 fentanyl pills), 1.6 kilograms of alprazolam, 1.4 kilograms of methamphetamine, 89 grams of cocaine, 98 grams of fentanyl powder, 32 grams of heroin, and several bottles of loose pills, including alprazolam and unidentified pills.

6.      During the search of the Dodge Charger, investigators also located multiple cellular phones, including: (1) a blue Apple iPhone located within a blue flowery bag within the Dodge Charger (labeled as MEDINA 1); (2) a Motorola Moto G Power cellular phone located within a blue bag within the Dodge Charger (labeled as MEDINA 2); (3) an Apple iPhone inside a clear case located within the center console area of the Dodge Charger (labeled as MEDINA 3); (4) a space grey Apple iPhone located within a blue bag within the Dodge Charger (labeled as MEDINA 4); and (5) a red Samsung phone located within a Michael Kors bag within the Dodge Charger (labeled as MEDINA 5).

7.      MEDINA was interviewed a second time, and investigators learned from MEDINA he only possessed the Glock for a couple of months. MEDINA indicated that the Glock found on his person was the main firearm he would carry for protection while performing drug deals. MEDINA identified his residence to investigators and stated he believed there was approximately 150,000 more fentanyl pills inside his apartment. MEDINA did not state that he is employed in any conventional manner. Department of Economic Security records in Arizona have not record of employment or income for MEDINA.

8.      During the follow-up interview, MEDINA also allowed investigators to look in his cellular phones. The primary cellular phone MEDINA showed to investigators was the cellular phone labeled as MEDINA 3 which was found within the Dodge Charger in the center console area. The phone has several contacts related to Mexico based sources of supply for fentanyl and methamphetamine and related to local Phoenix area drug couriers and drug purchasers. The phone has several applications used to facilitate MEDINA's drug transactions including WhatsApp, Text message (SMS), iMessage, and pill counting. MEDINA stated his blue iPhone (labeled as MEDINA 1) was his primary phone before he acquired the MEDINA 3 phone and has a large amount of drug evidence on it. The Motorola phone labeled MEDINA 2 was just given to him by "Guero" to communicate

about receiving and delivering fentanyl pills from the Mexico based source of supply known to MEDINA as Nacho. Investigators did not talk to MEDINA about the phones labeled MEDINA 4 and MEDINA 5.

9. Your affiant knows, from training and experience, that subjects who work for Mexico-based drug trafficking organizations and local, Phoenix-based, drug couriers and dealers regularly switch cellular phones and cellular phone numbers to avoid detection from law enforcement personnel. Because MEDINA stated he was recently using the phones labeled MEDINA 1, MEDINA 2 and MEDINA 3 for receiving and delivering fentanyl pills, your affiant believes there is probable cause that all of MEDINA's phones, including MEDINA 4 – 5, were used for drug transactions and will provide evidence related to drug transactions, including messages, contacts, prior and current locations for co-conspirators, and drug stash locations.

10. On May 2, 2022, at approximately 4:30 p.m., under the authority of Federal Search Warrant 22-8135 MB signed by the Honorable John Z. Boyle, investigators entered the residence and a vehicle (Hyundai Genesis) to search. Once inside the apartment, investigators found and seized approximately 16.2 kilograms of pills suspected to contain fentanyl (approximately 162,000 pills), approximately 3.4 kilograms of methamphetamine, approximately 0.4 kilograms heroin, and 1.00 kilograms of fentanyl powder. Inside the Hyundai Genesis investigators located 197 grams of methamphetamine.

11. The methamphetamine, cocaine, heroin, and fentanyl powder were field tested. All the samples tested positive for their respective drug.

### IV. ITEMS TO BE SEIZED

14. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONES.

15. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

    a. That drug traffickers often utilize electronic equipment such as cellular telephones, personal digital assistants (PDAs), and computers to generate, transfer, count, record, and/or store information related to the transportation, ordering, selling, and distribution of controlled substances.

    b. That drug traffickers commonly maintain addresses or telephone numbers in books, papers, cellular telephones, and PDAs which reflect names, addresses, and/or telephone numbers of their associates in the smuggling organization.

    c. That drug traffickers commonly utilize electronic paging devices, cellular telephones, radio telephones, and telephone scrambling devices in attempts to maintain secure communications between drug suppliers and customers.

    d. That drug traffickers take, or cause to be taken, photographs and videos of themselves, their associates, their property, and their drugs. That these drug dealers usually maintain these photographs within their possession and in their cellular telephones.

    e. That drug traffickers retain records pertaining to financial transactions and the persons for whom the transactions are being conducted.

    f. That drug traffickers collect data pertaining to other co-conspirators involved in drug-trafficking activity, including drug types and quantities provided, as well as monies owed and/or paid for illegal controlled substances.

    g. That drug traffickers possess and maintain records reflecting bank transactions and/or money transfers.

    h. That drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities

through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. These cellular telephones usually contain electronically stored data on or within the cellular telephones, including, but not limited to, contact names and numbers of narcotics associates, call details including call history, electronic mail (email) messages, text messages and/or text message history, and digital images of the drug-trafficking associates and/or activity, all of which can be used to identify and locate narcotics-trafficking associates, to identify methods of operation of the drug-trafficking organization (DTO), and to corroborate other evidence obtained during the course of the current investigation.

i. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking and money laundering activities. Therefore, evidence related to drug trafficking activity and money laundering activity is likely to be found on the SUBJECT CELLULAR TELEPHONES.

16. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONES.

## V.   DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

17. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONES. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

18. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONES for at least the following reasons:

a.  Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.  Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.  Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular

11

telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

        d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

        19.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONES because:

        a.      Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        b.      As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while

executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

   c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONES, including the use of computer-assisted scans.

21. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VI. **CONCLUSION**

22. Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), 21

U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), 18 U.S.C. § 1956(a)(1) (Money Laundering), 18 U.S.C. § 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Offense), and 21 U.S.C. § 843(b) (Use of a Communication Facility to Commit a Federal Drug Felony), are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONES further described in Attachment A.

_____
Task Force Officer Robert McCabe
Drug Enforcement Administration

Digitally signed by ROBERT MCCABE
Date: 2022.05.10 08:46:42 -07'00'

Electronically subscribed and telephonically sworn to me this __10__ day of ___May___, 2022.

_____
HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge